IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.  Criminal Action No. 2:20-cr-11-1

XAVIER HOWELL,
         Defendant.

## OPINION

Xavier Howell has moved to suppress evidence obtained as a result of the stop and subsequent search of his vehicle. Officers stopped Howell's vehicle because they suspected him of trafficking narcotics and had learned of an outstanding warrant for his arrest. During the stop, a drug dog alerted on Howell's vehicle, giving the officers probable cause to search it. The search uncovered methamphetamine, incriminating paperwork, cell phones, mailing and packaging materials, and U.S. currency. Howell asks the Court to suppress all this evidence, arguing that the officers unlawfully stopped and detained his vehicle, making their later search of it also unlawful. Because the officers had reasonable suspicion to stop Howell and did not unnecessarily prolong the stop, the Court will deny the motion to suppress the evidence found in the vehicle.

## I. FACTS

On September 26, 2019, a confidential informant told Chesapeake Police Department Detectives Beha and Milewczik that a drug trafficker would stay overnight at the Aloft Hotel in Chesapeake, Virginia, to conduct drug transactions. This informant had demonstrated reliability through previous tips: he "ha[d] provided information that led to the seizure of large amounts of currency, narcotics, and firearms," resulting "in arrests and convictions at the state and federal level." (ECF No. 75, at 2.) In the tip to the detectives, the informant named the alleged drug trafficker, and said the trafficker would drive a black rental SUV with out-of-state license plates

and travel with a female companion. The informant told the detectives that the suspected drug trafficker would depart from the Aloft Hotel the next morning. The Aloft Hotel, "known to police as a gathering place for drug dealers and their customers," is located in "a well-known drug trafficking area." (*Id.* at 1, 13.)

At about 7:00 a.m. on September 27, 2019, Detective Milewczik began surveilling the Aloft Hotel. Around 9:45 a.m., he obtained the Aloft Hotel's guest registry and searched for the name the informant had given him for the suspected drug trafficker. He did not see that individual's name or the name of any known female associate on the register. Instead, Detective Milewczik saw Howell's name on the guest registry. Howell had reserved a room at the Aloft Hotel for one night. Detective Milewczik recognized Howell's name because of Howell's involvement in a previous drug trafficking investigation. Through that earlier investigation, which had resulted in neither charges nor a conviction, Detective Milewczik had learned that Howell had a prior conviction for trafficking controlled substances into Virginia.

After Detective Milewczik saw Howell's name on the guest registry, Detective Beha conducted a National Crime Information Center ("NCIC")/Virginia Criminal Information Network ("VCIN") inquiry and discovered that Howell had an outstanding arrest warrant from Georgia for failure to appear.

About two hours later, Howell pulled up to the hotel in a black rental SUV with Georgia license plates. An unknown woman accompanied Howell. Police later identified this woman as

Howell's sister. Howell entered the hotel, retrieved his bags, and left in his SUV about ten minutes later.

Detectives Beha and Milewczik asked Officers Byrd and Weeks to stop Howell's vehicle, so the officers followed Howell after he left the hotel. Howell drove below the posted speed limit and signaled before he made turns.

As the detectives had requested, the officers stopped Howell based on the ongoing narcotics investigation and the outstanding arrest warrant. They stopped him at 12:06 p.m. After Howell stopped, Officer Byrd began checking Howell's driver's license and registration and performing an additional NCIC/VCIN inquiry. The inquiry confirmed that Howell had an outstanding arrest warrant from Georgia.

At 12:11 p.m., as Officer Byrd checked Howell's license and performed the NCIC/VCIN inquiry, K-9 Officer Rombs arrived with a drug dog. By the time Officer Byrd confirmed the warrant, the drug dog had alerted on Howell's vehicle. Based on the drug dog's alert, the officers searched the vehicle and uncovered approximately 1,768 grams of methamphetamine, incriminating documents, cell phones, mailing and packaging materials, and U.S. currency.

## II. LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "When a police officer stops a car and detains its occupants, the traffic stop amounts to a 'seizure' within the meaning of the Fourth Amendment." *United States v. White*, 836 F.3d 437, 440 (4th Cir. 2016), *abrogated on other grounds by United States v. Stitt*, 139 S. Ct. 399 (2018).

"The Fourth Amendment permits brief investigative stops," known as *Terry*[1] stops, "when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, 572 U.S. 393, 396–97 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). The "reasonable suspicion determination is a 'commonsensical proposition'" courts make by considering the totality of the circumstances. *United States v. Hands*, 573 F. App'x 278, 279 (4th Cir. 2014) (quoting *United States v. Foreman*, 369 F.3d 776, 782 (4th Cir. 2004)).

To justify a *Terry* stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. *Terry*, 392 U.S. at 21. "Evidence that would support only 'a mere "hunch" is insufficient,' though a reasonable basis need not establish probable cause and may well 'fall[] considerably short of satisfying a preponderance of the evidence standard.'" *United States v. Massenburg*, 654 F.3d 480, 485 (4th Cir. 2011) (alteration in original) (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)).

### III. DISCUSSION

Howell argues that because the officers lacked reasonable suspicion to stop him, and because the warrant did not justify the stop, the Court must exclude the evidence obtained during the stop. He argues in the alternative that the Court must suppress the evidence because the officers unreasonably extended the length of the stop. The government defends the lawfulness of both the stop of Howell and the five-to-eight-minute detention before the drug dog alerted to Howell's vehicle. In defense of the stop, the government argues that reasonable suspicion supported the stop. The government also points to the outstanding warrant from Georgia, arguing that the

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

warrant gave the officers the authority to arrest Howell, so it certainly gave them the authority to stop him. As for the brief roadside detention following the stop, the government says that the officers did not unnecessarily prolong the stop and the drug dog alerted during their diligent pursuit of the ongoing narcotics investigation, giving them probable cause to search Howell's vehicle. Because the officers had reasonable suspicion to stop Howell and the resulting stop did not exceed the allowable duration, the Court will deny Howell's motion to suppress.[2]

### A. Reasonable Suspicion

The government argues that the totality of the circumstances gave the officers reasonable suspicion to stop Howell and investigate him for suspected narcotics trafficking. The relevant circumstances included the tip from the confidential informant, Howell's status as a known narcotics trafficker, his criminal history, and his presence at a hotel known for drug trafficking.[3]

The government first points to the confidential informant's tip. An informant's tip alone, if supported by "enough indicia of reliability," can justify a *Terry* stop. *Adams v. Williams*, 407 U.S. 143, 147 (1972); *cf. United States v. Harris*, 39 F.3d 1262, 1269 (4th Cir. 1994) ("Information of criminal activity given by a known reliable informant is enough to sustain a *Terry* stop."). "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." *Adams*, 407 U.S. at 147. To determine whether an

---

[2] Because the Court concludes that reasonable suspicion justified the officers' stop, it does not address the government's argument that the outstanding warrant also justified the stop.

[3] The government offers several other factors that it says supported the officers' reasonable suspicion: Howell's use of a rental car and duffel bag, his cautious driving habits, and his decision to stay at a hotel despite having family nearby. These considerations have no weight in the reasonable suspicion analysis. *See Massenburg*, 654 F.3d at 482 (warning against the government "proffering 'whatever facts are present, no matter how innocent, as indicia of suspicious activity'" (quoting *United States v. Foster*, 634 F.3d 243, 248 (4th Cir. 2011)).

5

informant's tip is reliable enough to justify a *Terry* stop, courts look to the informant's past reliability and the accuracy and specificity of the tip. *See, e.g., United States v. Lundy*, 164 F. App'x 332, 333 (4th Cir. 2006) (affirming the district court's finding of probable cause to issue a search warrant based on information from an informant who had provided the government with reliable information in the past); *United States v. Harris*, No. 3:15cr170-REP, 2016 WL 1441382, at *7 (E.D. Va. Apr. 11, 2016) (finding the specificity and general accuracy of the informant's tip bolstered his reliability which, in turn, supported the government's reasonable suspicion to stop).

In this case, the confidential informant had provided the government with reliable information in past drug and gun investigations. In addition, the tip that led the detectives to Howell included details corroborated by the police. The informant told the detectives on September 26, 2019, that a suspected drug trafficker would spend that night at the Aloft Hotel in Chesapeake. The informant predicted that a woman would accompany the suspected trafficker, and that the suspected trafficker would drive a black rental SUV with out-of-state license plates. Later surveillance confirmed all of these details: Howell had registered for the night of September 26, 2019, at the Aloft Hotel, he showed up accompanied by a woman, and he drove a black rental SUV with Georgia license plates. All these corroborated details increased the reliability of the informant's tip. *See United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir. 1993) ("An important factor in determining whether an informant's report establishes probable cause is the degree to which it is corroborated.").

The informant, however, got one important detail wrong: the suspected drug trafficker's name. The informant named an entirely different person. But that single inaccuracy, although important, does not completely undermine the reliability of the informant's tip. Even an imperfect tip from a known confidential informant can support reasonable suspicion. *Illinois v. Gates*, 462

U.S. 213, 245 n.14 (1983).[4] In *Gates*, an anonymous informant incorrectly predicted that a suspected drug trafficker would return from Florida by plane instead of by car. *Id.* The Supreme Court, holding that the officers had probable cause to support their arrest, announced that the single mistake by the informant did not undermine the tip's probative value, stating that the Court "ha[s] never required that informants used by the police be infallible." *Id.*

*Gates* differs from this case in several important ways. First, in *Gates*, the Supreme Court evaluated the existence of probable cause, whereas here, the Court need only evaluate the existence of reasonable suspicion, "a less demanding standard." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Second, in *Gates*, the informant came forward anonymously, whereas here, the tip came from a known and previously reliable informant. A known informant who has provided reliable information in the past demonstrates more indicia of reliability than an anonymous tipster, whose "veracity is 'by hypothesis largely unknown, and unknowable.'" *Navarette*, 572 U.S. at 397 (quoting *Alabama v. White*, 496 U.S. 325, 329 (1990)). Finally, in *Gates*, the informant's mistake related to the method of transportation, whereas here, the informant gave the wrong name—a mistake that seems more significant. The three differences between *Gates* and this case and the

---

[4] *See also United States v. Wilson*, 964 F.2d 807, 809–10 (8th Cir. 1992) (affirming the district court's finding of probable cause to arrest even though a known informant inaccurately predicted when a suspected drug trafficker would arrive at a bar to sell drugs); *United States v. Hager*, 969 F.2d 883, 886 (10th Cir. 1992), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137 (1995) (affirming the district court's finding of probable cause to issue a search warrant based on information from a known informant who told an officer that the defendant "was a convicted murderer and drug dealer when, in fact, [the defendant] had not been convicted of murder or drug dealing"); *Hands*, 573 F. App'x at 279 (affirming the district court's finding of reasonable suspicion to stop despite the known informant's mistake about the color of the defendant's car).

7

degree of these differences push and pull the Court's consideration of whether the officers had reasonable suspicion to stop Howell.

As an initial matter, the confidential informant's mistake about the name of the suspected drug trafficker undoubtedly tarnished the informant's credibility.[5] But because the informant got everything else right, the tip supported the government's reasonable suspicion to stop Howell. The Court need not decide whether the tip alone permitted the stop, however, because the reasonable suspicion analysis takes into account "the whole picture," *Cortez*, 449 U.S. at 417, and several other facts figured into that picture.

First, the officers knew of Howell's involvement previous drug trafficking investigations, and they knew that he had a prior conviction for drug trafficking. "A prior criminal record 'is not, standing alone, sufficient to create reasonable suspicion.'" *United States v. Sprinkle*, 106 F.3d 613, 617 (4th Cir. 1997) (quoting *United States v. Davis*, 94 F.3d 1465, 1469 (10th Cir. 1996)). Further, "[j]ust as an officer's knowledge of a suspect's past arrests or convictions is inadequate to furnish reasonable suspicion; so too is knowledge that a suspect is merely under investigation, which is an even more tentative, potentially innocuous step towards determining criminal activity." *Foster*, 634 F.3d at 247. Howell's criminal history and his involvement in a prior drug trafficking investigation did not, however, stand alone. They merely provided additional support for the officers' reasonable suspicion.

Howell's presence at a hotel known for drug trafficking also supported the officers' reasonable suspicion. While a person's presence in a high crime area alone does not provide reasonable suspicion for *Terry* purposes, it falls "among the relevant contextual considerations in

---

[5] While hearing this matter, the Court expressed doubt about the value of the informant's tip because of the incorrect name. Upon further consideration, however, and as discussed below, the Court concludes that the error does not render the stop unreasonable.

8

a *Terry* analysis." *Wardlow*, 528 U.S. at 124. This fact, therefore, also provided additional support for the officers' reasonable suspicion.

* * *

Considering the detailed and largely accurate tip from the reliable confidential informant, Howell's involvement in the prior drug trafficking investigation, his criminal history, and his presence at a hotel known for drug trafficking, the Court finds that the officers reasonably suspected Howell of trafficking narcotics and could stop him to investigate further.[6]

### B. *Duration of the Stop*

Howell also argues that the officers unlawfully prolonged his roadside detention to wait for the drug dog to arrive. The government argues that *Terry* permitted Howell's five-to-eight-minute detention before the drug dog's alert because, during that time, the officers diligently investigated their reasonable suspicion of narcotics trafficking.

The mission of the *Terry* stop determines how long the stop can last. *See Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (noting that "the tolerable duration of police inquiries in the [*Terry*] context is determined by the seizure's 'mission'"); *Florida v. Royer*, 460 U.S. 491, 500 (1983) ("The scope of the detention must be carefully tailored to its underlying justification."). The police must "diligently pursue their investigation" and must not "unnecessarily prolong[]" the

---

[6] The Court does not rely at all on the Georgia warrant in finding that the officers had reasonable suspicion to stop Howell and investigate his involvement in drug trafficking. In *United States v. Moore*, the Fourth Circuit affirmed the district court's ruling that an out-of-state arrest warrant provided probable cause to arrest because "the arresting officers had *reliable information*" that confirmed the warrant's existence. 309 F. App'x 688, 689 (4th Cir. 2009) (emphasis added). In this case, the officers did nothing to verify the NCIC hit, even though it contained a note to confirm that the warrant remained outstanding. (*See* ECF No. 75-1, at 1 (quoting the initial NCIC report as saying, "WANTED – CONFIRM THAT WANT IS STILL OUTSTANDING").) The Court notes its skepticism of quick law enforcement action based on a database "that has no mechanism to assure its accuracy." *Arizona v. Evans*, 514 U.S. 1, 16–17 (1995) (O'Connor, J., concurring).

stop. *United States v. Sharpe*, 470 U.S. 675, 685 (1985) (emphasis omitted) (quoting *United States v. Place*, 462 U.S. 696, 709 (1983)). "Authority for the seizure thus ends when tasks tied to the [investigation] are—or reasonably should have been—completed." *Rodriguez*, 575 U.S. at 354.

The officers here stopped Howell because they reasonably suspected him of drug trafficking. They could, therefore, detain Howell as long as necessary to diligently pursue their drug investigation.

The officers pulled Howell over at 12:06 p.m. Five minutes later, the drug dog arrived. Between 12:11 p.m. and 12:14 p.m., before Officer Byrd confirmed the outstanding warrant from Georgia, the drug dog alerted on Howell's vehicle. When the drug dog alerted, the officers were still diligently pursuing their drug investigation and had not unnecessarily prolonged the stop in any way. Accordingly, the Court finds that the officers had authority to detain Howell for the five to eight minutes before the drug dog's alert.

## III. CONCLUSION

The government had reasonable suspicion to stop Howell and authority for the brief detention preceding the drug dog's alert. The Court, therefore, will deny Howell's motion to suppress the evidence obtained as a result of the search of Howell's vehicle.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 30 September 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge