**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**XAVIER HOWELL,**

          **Petitioner,**

**v.**

**UNITED STATES OF AMERICA,**

          **Respondent.**

        **Civil No. 2:25cv83**
     **Criminal No. 2:20cr11**

## OPINION AND ORDER

This matter is before the Court on Xavier Howell's ("Petitioner") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 308. The Government filed a brief in opposition to Petitioner's § 2255 motion, ECF No. 314, and Petitioner filed a reply brief, ECF No. 315. Petitioner recently filed a motion for leave to amend his § 2255, which the Court construes as a supplement to his § 2255. ECF No. 324. After fully considering all of Petitioner's arguments, including those in his recent supplement, Petitioner's § 2255 motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was originally charged in February 2020 with three felony offenses associated with a drug trafficking conspiracy. ECF No. 3. Petitioner's trial counsel filed a motion to suppress evidence recovered following a traffic stop and drug-dog alert. ECF Nos. 63-64. A suppression hearing was conducted by another judge of this Court in September 2020. ECF No. 90. Later that

same month, the judge issued a written Opinion denying the motion and finding that the traffic stop was lawful and that the officers did not unnecessarily prolong the stop. ECF No. 92, at 1. Shortly thereafter, a superseding indictment was returned adding a money laundering conspiracy charge, ECF No. 100, and due to a motion filed by one of Petitioner's codefendants, trial was rescheduled for April 2021. ECF No. 123. Trial was thereafter rescheduled, with the parties' agreement, to July 2021.

On July 12, 2021, the day the jury trial was scheduled to begin, Petitioner and his counsel signed a written waiver of a jury trial and a bench trial began instead. The bench trial concluded on July 14, 2021, at which time the trial judge made a finding of guilt as to Counts One through Four. Trial Tr. 501, ECF Nos. 190-92. The matter was continued for sentencing and a presentence investigation report ("PSR") was prepared. ECF No. 195. As calculated in the PSR, the advisory sentencing Guidelines recommended a sentence of "life" imprisonment based on a Total Offense Level of 43 and a Criminal History Category of III. Id. at 19.

Prior to the sentencing hearing, defense counsel filed a position paper advancing several objections to the Guideline calculation set forth in the PSR. ECF No. 199. First, defense counsel objected to the PSR's reliance on estimated quantities of methamphetamine contained in packages that were shipped through

the mail but were "never recovered or analyzed." Id. at 1. Second, counsel objected to the "four-level enhancement for a leadership role," arguing that Petitioner's "conduct and role" warranted a lesser enhancement. Id. at 1-2. Third and finally, counsel objected to the "two-level enhancement for maintaining a drug-involved premises," arguing that a co-conspirator was responsible for maintaining the residence at issue. Id. at 2.

At sentencing, defense counsel elected to proceed only on his objection to the role enhancement, which was overruled by the Court after hearing argument from both counsel. Sent. Tr. 2-10, ECF No. 207. The sentencing judge then noted that defense counsel had not formally objected to the PSR's failure to include a Guideline credit for acceptance of responsibility; however, the judge clarified that any such objection, even if successful, would have had no impact on the advisory Guideline range in the case. Id. at 10-11. This accurate statement was based on the fact that Petitioner's total offense level was in fact level 46; it was only treated as a level 43 because level 43 is the maximum offense level on the Guideline sentencing table. See U.S.S.G. § 5A App. n.2 ("An offense level of more than 43 is to be treated as an offense level of 43."). Had Petitioner sought and been granted the maximum three-level credit for acceptance of responsibility, U.S.S.G. § 3E1.1, his offense level total would still have been a level 43.

3

After hearing argument from both counsel, the Court agreed with the parties' shared contention that the Guideline-recommended sentence of life imprisonment was "excessive for the non-violent drug crime" at issue.  ECF No. 205, at 3; Sent. Tr. 25-31.  After considering all the relevant sentencing factors, the Court varied downward to a sentence of 360 months imprisonment.  Sent. Tr. 31.

Following sentencing, Petitioner filed a direct appeal challenging the denial of his motion to suppress evidence recovered during the disputed traffic stop.  ECF No. 202.  In June of 2023, the Fourth Circuit Court of Appeals affirmed the denial of the motion to suppress.  ECF No. 255, at 13.  Petitioner sought further review of this ruling, but in March 2024 the United States Supreme Court denied his petition for a writ of certiorari.  ECF No. 281.  Approximately one year later, Petitioner filed his § 2255 motion and memorandum in support, ECF Nos. 308, 309.  After a briefing extension was granted, ECF No. 312, the motion was fully briefed as of July 2025.  In April 2026, Petitioner filed his § 2255 supplement.  ECF No. 324.  All of the § 2255 claims are now ripe for resolution.

## II. STANDARD OF REVIEW

A federal prisoner may collaterally challenge his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  To obtain such relief, a petitioner must prove by a preponderance of the evidence

that (1) his sentence or conviction was "imposed in violation of the Constitution or laws of the United States"; (2) the district court "was without jurisdiction to impose such sentence"; (3) the sentence exceeds "the maximum authorized by law"; or (4) the sentence or conviction is "otherwise subject to collateral attack." Id.; Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). A § 2255 motion is "expected to state facts that point to a real possibility" that one of these errors occurred; "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013); see also Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970) (permitting disposition without a hearing where the record "conclusively show[s] that the prisoner is entitled to no relief").

Although procedural rules generally bar a petitioner from raising § 2255 claims that were previously forfeited or previously adjudicated on direct appeal, a petitioner may properly assert a § 2255 claim alleging that his counsel provided constitutionally ineffective assistance. See U.S. Const. amend. VI; Massaro v. United States, 538 U.S. 500, 504 (2003). "To demonstrate ineffective assistance of counsel, a defendant must show (1) that counsel's representation 'fell below an objective standard of reasonableness,' and (2) that 'the deficient performance prejudiced the defense.'" United States v. Cooper, 617 F.3d 307,

5

312 (4th Cir. 2010) (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).  A petitioner must prove an ineffective assistance claim by a preponderance of the evidence.  Miller, 261 F.2d at 547.

To satisfy the first Strickland prong a petitioner must demonstrate that their lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.  Reviewing courts strongly presume that counsel exercised reasonable professional judgment, and only in "relatively rare situations" will a § 2255 motion establish that "the identified acts or omissions were outside the wide range of professionally competent assistance."  Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690).  As it is all too easy to challenge an act, omission, or strategy once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland, 466 U.S. at 689.

To establish the second Strickland prong a petitioner must "affirmatively prove prejudice" by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland,

466 U.S. at 693-94.    "A reasonable probability is a probability sufficient to undermine confidence in the outcome."    Id. at 694.

### III. DISCUSSION

Petitioner advances six grounds for relief in his initial § 2255 motion, all alleging that his trial or appellate counsel provided constitutionally ineffective assistance.    ECF Nos. 308, 309.    In ground one, Petitioner alleges that counsel was deficient for failing to challenge the warrantless search of a hotel registry and the subsequent traffic stop.    In grounds two and three, he alleges that trial counsel and appellate counsel failed to challenge improper drug weight calculations that impacted the sentencing Guidelines.    In grounds four and five, he argues that trial counsel and appellate counsel failed to advocate for a Guideline credit for acceptance of responsibility.    Finally, in ground six, Petitioner argues that the cumulative effect of the sentencing errors supports § 2255 relief.

In addition to the six grounds raised in the original § 2255 motion, Petitioner's recent supplement seeks to advance an additional ineffective assistance claim.    ECF No. 324.    This seventh ground for relief asserts that trial counsel failed to provide accurate advice regarding the additional sentencing enhancements Petitioner would receive if he proceeded to trial. Each of Petitioner's seven ineffective assistance claims is addressed in turn below.

## A. Ground One - Registry Search

Petitioner's first ground for relief alleges that trial counsel provided ineffective assistance by failing to challenge the constitutionality of a warrantless search of a hotel registry. ECF No. 309, at 3-14. Prior to Petitioner's arrest, investigating officers who were monitoring suspected drug activity at a hotel in Chesapeake, Virginia, asked the hotel staff if they could review the hotel registry. Suppression Tr. 6-9, ECF No. 187. The hotel staff shared the registry with the officers, who recognized Petitioner's name as that of an individual previously involved in drug trafficking. Id. at 10. In his § 2255 motion, Petitioner asserts that his counsel should have argued that the warrantless review of the hotel registry violated Petitioner's Fourth Amendment right to privacy.[1] ECF No. 309, at 4, 7.

In support of ground one, Petitioner contends that the United States Supreme Court has recognized that guests have a reasonable expectation of privacy in hotel registries such that the Fourth Amendment precludes warrantless access to a registry. ECF No. 309, at 3 (citing City of Los Angeles v. Patel, 576 U.S. 409 (2015)). Petitioner, however, misreads the Supreme Court's Patel opinion, which does not establish a hotel guest's reasonable

---

[1] The Fourth Amendment reads, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

expectation of privacy in such a registry or its contents. Rather, Patel "hold[s] only that a hotel owner" has an expectation of privacy in their own business records such that the owner "must be afforded an opportunity to have a neutral decisionmaker review an officer's demand to search the registry" before police can compel the owner to reveal their business records. Patel, 576 U.S. at 421. This right of hotel owners to refuse to turn over their records to police absent a warrant does not create any derivative rights in the hotel guests. To the contrary, the Supreme Court expressly recognized in Patel that the "narrow nature of [the] holding" in that case leaves hotel operators "free to consent to searches of their registries" without a warrant. Id. at 423.

This freedom to voluntarily consent is precisely what was exercised by the hotel staff in this case. As another judge of this Court has squarely recognized, hotel guests have "no reasonable expectation of privacy in the hotel's guest registration records," and as a result, a hotel's voluntary disclosure of information in the registry does not violate the guest's "purported privacy interest." United States v. Hawkins, No. 4:25cr75, 2026 WL 1494515, at *5 (E.D. Va. May 28, 2026) (citing United States v. Cormier, 220 F.3d 1103, 1108 (9th Cir. 2000)); see United States v. Sesay, 937 F.3d 1146, 1152 (8th Cir. 2019) (rejecting the defendant's privacy argument invoking Patel, explaining that while a motel guest "has a reasonable expectation

9

of privacy in his rented room," the guest does <u>not</u> also have "a reasonable expectation of privacy in his <u>registration</u> as a guest at the motel").

In light of the foregoing, Petitioner fails to identify a colorable claim that his Fourth Amendment rights were violated when the police located his name in the hotel registry as he does not demonstrate a reasonable expectation of privacy in the basic biographical data he shared with the hotel. <u>See</u> <u>Katz v. United States</u>, 389 U.S. 347, 361 (1967) (Harlan, J. concurring) (explaining that a person must demonstrate that they have a personal, reasonable expectation of privacy to claim Fourth Amendment protection). Because Petitioner has not shown that his Fourth Amendment argument had merit, he cannot demonstrate that his trial counsel performed at a constitutionally deficient level by failing to cite <u>Patel</u> or otherwise challenge the hotel's decision to voluntarily share its records with police. <u>See</u> <u>Moore v. United States</u>, 934 F. Supp. 724, 731 (E.D. Va. 1996) ("[T]here can be no claim of ineffective assistance where, as here, counsel is alleged to have failed to raise a meritless argument."); <u>Faison v. United States</u>, No. 4:12cr4, 2014 WL 1220545, at *5 (E.D. Va. Mar. 24, 2014) ("Counsel is not required to advance frivolous or irrelevant arguments, and is given significant discretion when deciding on proper defense strategy." (citing <u>Strickland</u>, 466 U.S. at 688-89)).

10

In addition to failing to demonstrate deficient performance, Petitioner fails to demonstrate Strickland prejudice as the record fails to suggest a reasonable probability of a different outcome had trial counsel invoked Patel in an effort to demonstrate that the registry search violated Petitioner's privacy rights.[2] For these reasons, Petitioner first ground for relief is **DENIED**.

## B. Ground Two – Drug Weights (Trial Counsel)

Petitioner's second ground alleges that trial counsel was constitutionally deficient for failing to object to the drug classifications made at sentencing under U.S.S.G. § 2D1.1(c). ECF No. 309, at 14-17. Petitioner contends that the methamphetamine attributed to him at sentencing was improperly classified as "pure" methamphetamine rather than a "mixture or substance" of methamphetamine and that trial counsel's failure to object resulted in a higher Guideline range and longer sentence. Id. at 14-15.

Methamphetamine of at least 80% purity is classified as "ice" for sentencing purposes and carries an elevated punishment under

---

[2] Petitioner also contests trial counsel's failure to challenge the lawfulness of the traffic stop that followed the registry search. According to Petitioner, the evidence seized during the stop was inadmissible as "fruit of the poisonous tree." ECF No. 309, at 10-14. However, for the reasons stated above, because Petitioner fails to demonstrate that the registry search was unconstitutional, he cannot demonstrate that such search tainted any after-acquired evidence. Additionally, to the extent Petitioner suggests that his lawyer should have challenged the stop generally based on a lack of reasonable suspicion, id. at 11, defense counsel did in fact make such argument in support of his motion to suppress. ECF No. 64, at 4.

11

the Guidelines due to its potency. U.S.S.G. § 2D1.1(c) n.(C). Methamphetamine that is less than 80% pure is classified as a "mixture or substance containing methamphetamine" and carries a significantly less severe punishment due to its reduced potency. Id. at n.(A). In the event that a defendant is sentenced based on possession of multiple different controlled substances, the weight of each substance is translated to a "converted drug weight" using the Guideline "Drug Conversion Tables." U.S.S.G. § 2D1.1 App. n.8. Pursuant to such tables, ice converts at a rate 10 times greater than the rate applicable to a less pure mixture or substance containing methamphetamine. U.S.S.G. § 2D1.1 App. n.8(D).

Here, Petitioner's § 2255 arguments appear to rely on the mistaken impression that multiple drug shipments attributed to him were determined to contain "ice." As explained through trial testimony, the methamphetamine Petitioner regularly received through the mail was "highly pure." ECF No. 200, at 3-4. However, because a small sample of methamphetamine that was seized in this case and tested revealed a purity level slightly below 80% (the "ice" threshold), Petitioner's PSR includes a very conservative calculation utilizing the "mixture or substance" drug conversion multiplier for nearly all of the methamphetamine attributed to Petitioner. Id.; ECF No. 195 ¶¶ 11, 17-18, 22; see Sent. Tr. 26 ("He was credited with the less-pure form [of methamphetamine] in

12

the presentence report."). The elevated drug weight conversion rate for ice was only applied to a single package based on the actual seizure of such package and laboratory tests establishing the purity to be in excess of 80%.[3] Because the drug weight conversion calculation used the ice multiplier only for seized drugs tested and proven to be ice, Petitioner's claim that his counsel erred by not challenging the drug conversion, and that Petitioner suffered prejudice as a result, fails.

Relatedly, Petitioner's insistence that the Guideline "base" offense level was increased from level 34 to level 40 due to improper reliance on the ice conversion rate, or due to some other improper basis, similarly relies on a mistaken understanding of the Guideline calculation in this case. The "base offense level of 40" referenced by the judge at sentencing, Sent. Tr. 10, was not drawn directly from the Guideline drug table (which provides for a maximum "base" offense level of 38). Rather, the "base" level of 40 was calculated using a drug-table base of 36, which was then increased by two levels because Petitioner possessed a firearm, U.S.S.G. § 2D1.1(b)(1), and by two more levels because Petitioner maintained a drug-involved premises, U.S.S.G.

---

[3] After testing, the seized package was determined to be approximately 88% to 97% pure. ECF No. 195 ¶ 11. Because the other quantity of seized methamphetamine revealed a purity of approximately 75%, the PSR assumes, in Petitioner's favor, that all of the methamphetamine in packages that were shipped through the mail but never seized were under 80% pure. ECF No. 195 ¶¶ 11, 17, 22.

§ 2D1.1(b)(12). This calculation is set forth in PSR ¶ 29, and nothing in Petitioner's § 2255 filings calls its accuracy into question. ECF No. 195. Accordingly, Petitioner fails to demonstrate that his trial counsel committed a constitutional error as necessary to satisfy Strickland's first prong. Petitioner likewise fails to demonstrate prejudice as necessary to satisfy Strickland's second prong. Petitioner's second ground for relief is therefore **DENIED**.

### C. Ground Three: Drug Weights (Appellate Counsel)

Petitioner's third ground argues that appellate counsel rendered ineffective assistance for failing to challenge the Court's classification and calculation of the drug weights. ECF No. 309, at 18-20. For the same reasons discussed immediately above, this claim plainly fails to satisfy either prong of Strickland.

"With respect to performance, '[e]ffective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit.'" United States v. Allmendinger, 894 F.3d 121, 126 (4th Cir. 2018) (quoting United States v. Mason, 774 F.3d 824, 828-29 (4th Cir. 2014)). Rather, "winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." Id. (quoting Smith v. Murray, 477 U.S. 527, 536 (1986)).

14

Here, there was no appealable error to support the claim Petitioner raises in ground three. The PSR appropriately classified the methamphetamine using a conservative conversion rate and correctly calculated the base offense level. ECF No. 195 ¶ 29. As Petitioner fails to identify a well-founded claim to raise on appeal, he fails to demonstrate that his appellate counsel rendered constitutionally deficient performance or that he suffered resulting prejudice. Petitioner's third ground for relief is therefore **DENIED**.

### D. Ground Four: Acceptance (Trial Counsel)

Petitioner's fourth ground argues that his trial counsel's failure to advocate for a three-level Guideline credit based on acceptance of responsibility was constitutionally deficient. ECF No. 309, at 21-23. The sentencing Guidelines provide for an offense level reduction of two levels when a defendant carries his burden to "clearly demonstrate[] acceptance of responsibility," and provide for an additional one-level reduction if the timing of a defendant's acceptance allows the Government to "avoid[] preparation for trial." U.S.S.G. § 3E1.1. The application notes to the Guidelines indicate that an appropriate consideration when determining whether a defendant has carried his burden to demonstrate acceptance is whether the defendant "truthfully admitt[ed] the conduct comprising the offense(s) of conviction." U.S.S.G. § 3E1.1 App. n.1. The application notes further state

15

that the credit is "not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt." Id. at App. n.2. That said, the application notes acknowledge that proceeding to trial "does not automatically preclude a defendant" from an acceptance credit, specifically noting the "rare circumstance[]" when a defendant proceeds to trial to preserve another issue unrelated to factual guilt. Id.

Petitioner suggests that he clearly demonstrated acceptance of responsibility and argues that his lawyer was constitutionally deficient for not challenging the absence of a credit for acceptance. Petitioner, however, did not plead guilty. And while Petitioner did proceed to trial primarily to preserve his right to appeal the adverse suppression ruling, Trial Tr. 15; Sent. Tr. 22-23, at trial, Petitioner affirmatively advanced the defense that he "dealt in marijuana . . . not methamphetamine." Trial Tr. 28, 31. During closing argument, defense counsel asked the Court to find the Government's witnesses not credible and cited a filed but unused jury instruction that purported to require the Government to prove that Petitioner had a specific intent to distribute methamphetamine. Trial Tr. 499-500. Accordingly, the case-specific record, illustrated by a trial carrying over into a third day that spans over 500 pages of transcript, at least suggests that Petitioner did put the Government to its burden of

16

proof at trial.  Such conduct, depending on the lens through which it is viewed, could easily be interpreted as inconsistent with acceptance of responsibility.

Based on the record as it existed prior to the sentencing hearing, Petitioner fails to demonstrate that his counsel was <u>constitutionally</u> deficient for failing to raise a colorable, but not necessarily meritorious, objection to the lack of an acceptance credit.  Rather, defense counsel could have reasonably believed that such an objection would be denied by the sentencing judge. Furthermore, it is notable that defense counsel did not "overlook" the acceptance of responsibility issue, but instead made the strategic decision to raise the issue as part of a variance request.  <u>Cf.</u> Defense Position Paper, ECF No. 199 (asking the Court to "place great weight on [Petitioner's] attempt to avoid a trial and his willingness to waive a jury trial in mitigation of his sentence.").[4] The constitutional reasonableness of trial counsel's conduct is further underscored by the fact that a reduction for acceptance, even if secured, would have had no impact on the advisory Guideline range as Petitioner's offense level total (calculated to be a level 46 before acceptance) would have been

---

[4] In imposing a sentence of 360 months, the Court expressly acknowledged defense counsel's argument for an even greater variance based on the fact that Petitioner "did try to plead" guilty, but went to trial to preserve his appellate rights associated with the suppression ruling. Sent. Tr. 31.

17

level 43 with or without an acceptance credit.[5]  Accordingly, trial counsel acted within the range of reasonably competent assistance when he decided not to challenge acceptance and instead raise the same issue in support of his request for a substantial downward variance.

Alternatively, even if the Court assumes for the sake of argument that trial counsel was constitutionally deficient for failing to file a formal objection, Petitioner falls far short of demonstrating Strickland prejudice.  It is true that the sentencing judge stated at the sentencing hearing that he "would have given [Petitioner] three points off for responsibility" had defense counsel argued for it because Petitioner went to trial for the purpose of preserving his appeal rights and simplified the trial by waiving a jury.  Sent. Tr. 10.  However, immediately after making this statement, the judge explained that "none of that would have made any difference" because "the maximum guideline level you can get is 43 for an offense level," and even with a three-level credit for acceptance, "that's what he would have had."  Id. at 10-11.  Because an objection seeking and securing a credit for

_____

[5] If defense counsel had litigated this issue and succeeded, it appears unlikely that the Government would have agreed that the acceptance credit should be three levels (rather than two) because the Government appears to have expended significant resources preparing for a jury trial.  See ECF Nos. 169-70, 172, 175; see U.S.S.G. § 3E1.1(b) (indicating that the acceptance credit increases from two levels to three levels when the Government files a motion indicating that the timing of the defendant's actions allowed the Government to avoid "substantive preparations" for a jury trial).

18

acceptance would not have changed the offense level or advisory Guideline calculation, Petitioner cannot demonstrate a reasonable likelihood of a different outcome had counsel filed an objection. As Petitioner's fourth ground fails to satisfy both prongs of Strickland, it is **DENIED**.

### E. Ground Five: Acceptance (Appellate Counsel)

Petitioner's fifth ground argues that his appellate counsel rendered ineffective assistance by failing to challenge the absence of a Guideline credit for acceptance. ECF No. 309, at 24-26. For the same reasons discussed immediately above, there was no appealable error to support this claim. As there was not a well-founded claim to raise on appeal, Petitioner cannot demonstrate that his appellate counsel rendered constitutionally deficient performance or that he suffered resulting prejudice. See Allmendinger, 894 F.3d at 126 (explaining that appellate advocacy is more effective when counsel bypasses weaker claims); Ramirez v. United States, No. 2:19cr60, 2026 WL 674207, at *3 (D.S.C. Mar. 10, 2026) ("[I]t was objectively reasonable not to appeal an issue that had no impact on [the defendant's] guidelines range."); see also United States v. McDonald, 850 F.3d 640, 643 (4th Cir. 2017) (explaining that guidelines errors are harmless when the record reveals that "the district court would have reached the same [reasonable sentence] even if it had decided the

19

guidelines issue the other way"). Petitioner's fifth ground for relief is therefore **DENIED**.

### F. Ground Six: Cumulative Error

Petitioner's sixth ground for relief asserts that the cumulative effect of trial counsel's deficient handling of sentencing prejudiced Petitioner by causing him to serve a longer sentence. ECF No. 309, at 26-33. Petitioner reiterates his prior claim that counsel deficiently handled both the determination of drug weights and acceptance of responsibility, and makes additional references to counsel's alleged failures associated with the sentencing judge's purported willingness to reduce Petitioner's enhancement for his leadership role. Id.

The cumulative error doctrine only applies in § 2255 cases when each claim of error is individually identifiable as a constitutional error. See United States v. Russell, 34 F. App'x 927, 927-28 (4th Cir. 2002) ("[I]t is not appropriate to consider the cumulative effect of attorney error when the individual claims of ineffective assistance do not violate the defendant's constitutional rights." (citing Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998))). Here, Petitioner fails to demonstrate that any constitutional error occurred. See United States v. Trent, No. 3:09cr293, 2015 WL 4624879, at *6 (E.D. Va. July 31, 2015) (explaining that because the § 2255 petitioner "has not been able to establish that his counsel's performance was deficient in any

20

respect, the cumulative effect of deficient performance is not an issue in this case").

As explained above, Petitioner does not establish that his trial counsel was constitutionally deficient based on counsel's handling of the drug weights or acceptance. Similarly, as to Petitioner's allegations that counsel erred by failing to "capitalize" on the Court's willingness to reduce Petitioner's leadership role enhancement, ECF No. 309, at 26, 32, Petitioner appears to conflate the Court's comments on acceptance of responsibility with its comments on the role enhancement. Tellingly, trial counsel filed an objection to the role enhancement and the trial judge considered and <u>expressly rejected</u> this challenge on the merits. Sent. Tr. 9 ("So I don't think there's any question that Mr. Howell was an organizer or leader of the criminal activity [and] that it involved five or more participants.").

Alternatively, even if the Court assumes, as it did above, that trial counsel committed a constitutional error in his handling of acceptance, this would be the lone constitutional error, and it did not prejudice Petitioner. Without multiple errors to cumulate, and without prejudice to cumulate even if there were multiple errors, ground six fails to state a valid basis for habeas relief. Accordingly, Petitioner's final ineffective assistance ground in his original § 2255 motion is **DENIED.**

## G. Supplemental Claim: Erroneous Plea Advice

Petitioner asserts in his April 2026 supplement that he should be permitted to advance a new ineffective assistance claim challenging trial counsel's plea advice because the disputed advice relates to sentencing matters that "relate back" to the timely filed sentencing challenges in Petitioner's original § 2255 motion. ECF No. 324, at 1-2. Assuming without deciding that this new § 2255 claim does "relate back" and is properly before the Court, such claim fails on its merits for the reasons explained below.

Petitioner's supplemental claim argues that his trial counsel provided erroneous advice regarding the so-called "trial penalty" that Petitioner would face if he elected to proceed to trial rather than plead guilty. Id. at 2. Specifically, Petitioner alleges that counsel did not explain that "proceeding to trial exposed [Petitioner] to multiple guideline enhancements," including "(A) Leadership enhancement; (B) Firearm enhancement; (C) Premises enhancement; and, (D) Money Laundering enhancement," which collectively "exposed him to a life range guideline calculation." Id. Petitioner asserts that there is a reasonable probability that he would have pled guilty if he better understood this increased exposure brought on by a trial. Id. at 2-3.

Petitioner is mistaken. While it is true that a credit for acceptance of responsibility (already addressed above) is

22

jeopardized by a decision to go to trial, nearly all of the other enhancements that Petitioner raises in his supplement would be applicable regardless of whether he pled guilty or went to trial.[6] Petitioner therefore fails to identify a constitutional error committed by his lawyer.

Petitioner fails to demonstrate <u>Strickland</u> prejudice for similar reasons. By pleading not guilty Petitioner preserved his ability to appeal the adverse suppression ruling, a valid strategic decision as contemporaneously recognized by the trial judge at sentencing. Sent. Tr. 10, 14-15, 31. Because entering a guilty plea would have sacrificed Petitioner's appellate rights with very limited benefit related to the Guideline enhancements Petitioner identifies, Petitioner fails to demonstrate a reasonable

---

[6] Though Petitioner does not articulate this precise argument, it appears that Petitioner would have avoided the money laundering Guideline enhancement by accepting the Government's offer to plead guilty only to Counts One and Two of the superseding indictment. <u>See</u> Trial Tr. 15 (recounting the plea offer); U.S.S.G. § 2S1.1(b)(2)(B) (requiring a conviction for money laundering for the Guideline enhancement to apply). However, Petitioner was plainly aware that rejecting such plea offer, which he did to preserve his appeal rights, would expose him to <u>additional felony convictions</u> on Counts Three and Four and to a "modest sentencing difference." ECF No. 324, at 2 (outlining Petitioner's admission that his counsel prepared him for an increase to his sentence of "approximately five years" based on his decision to proceed to trial). Accordingly, even if defense counsel failed to accurately predict the precise impact that a money laundering conviction would have on the final Guideline range, such error was not an error of constitutional proportions. <u>Cf.</u> <u>Persons v. United States</u>, No. CR 3:11-011, 2017 WL 2374395, at *2 (S.D.W. Va. May 31, 2017) ("An attorney is not considered ineffective for providing a defendant an estimate of a sentencing guideline range, even if the calculations turn out to be incorrect."). Furthermore, Petitioner does not demonstrate prejudice, as the record fails to establish that he, or an objectively reasonable person in his circumstances, would have forfeited his trial rights to secure a two-level Guideline credit.

23

probability of a different outcome.[7]   To the contrary, an objectively reasonable person in Petitioner's circumstances would not waive his right to appeal a suppression issue that had the potential to undermine his convictions in their entirety in order to secure a two-level Guideline credit.[8]   See <u>United States v. Fugit</u>, 703 F.3d 248, 260 (4th Cir. 2012) (explaining that a petitioner's "subjective preferences . . . are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts"). Accordingly, even accepting Petitioner's assertion that his new ineffective assistance claim should "relate back" to allegations in his original § 2255 motion, Petitioner's supplemental claim is **DENIED** on the merits.

### IV. CONCLUSION

For the reasons explained above, all of Petitioner's § 2255 claims are **DENIED** on the merits.  ECF Nos. 308, 324.  Finding that

---

[7] Though not directly relevant to any pre-trial decisions, the reliability of the outcome in this case is further illustrated by the fact that the sentencing judge revealed his viewpoint that Petitioner should be treated the same as a person who pled guilty and received a credit for accepting responsibility.  Additionally, the judge quickly dismissed the notion that a life sentence, as recommended by the Guidelines, was appropriate.  Stated a little differently, the judge did not impose any "trial penalty" based on Petitioner's decision to proceed to a bench trial, and the fact that the Guidelines called for "life" imprisonment rather than 360 months to life imprisonment did not prejudice Petitioner, who was sentenced to 360 months. ECF No. 200, at 1.

[8] The sentencing judge noted that while he ruled against Petitioner on the suppression motion, it "had some colorable merit" and "maybe" the court's ruling would get reversed on appeal.  Sent. Tr. 15.

Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability as to Petitioner's § 2255 motion is **DENIED**.  28 U.S.C. § 2253(c); see R. Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 335-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-85 (2000).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. Fed. R. App. P. 22(b); R. Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a).  If Petitioner intends to seek a certificate of appealability from the Fourth Circuit, he must do so **within sixty (60) days** from the date of this Opinion and Order.  Petitioner may seek such a certificate by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to Petitioner and to counsel for the Government.

**IT IS SO ORDERED.**

_____ /s/
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 15 , 2026

25